IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| ELDY YANERI SANCHEZ PEREZ | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | 1:26-cv-0593 (AJT/LRV) |
| PAUL PERRY, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER

Before the Court is Eldy Yaneri Sanchez Perez's Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 seeking release from Immigration and Customs Enforcement ("ICE") custody that began on February 27, 2026. Respondents oppose the Petition. [Doc. No. 5]. Upon consideration of the filings, and for the reasons stated below, the Petition is GRANTED.

### I.    BACKGROUND

Petitioner is a citizen of Honduras and a single mother of her 18-year old daughter. [Doc. No. 2] ¶ 17, 27. She first entered the United States in January 2005 without inspection, and was ordered removed on March 2, 2005. [Doc. No. 5-1] ¶¶ 5–7. On January 26, 2010, Petitioner departed the United States. *Id.* ¶ 8. On or about January 13, 2012, Customs and Border Protection agents encountered Petitioner shortly after she crossed unlawfully into the United States at the United States and Mexico border. *Id.* ¶ 9. Petitioner was issued a I-871, Notice of Intent/Decision to Reinstate Prior Order and during her reinstatement proceedings claimed a fear of returning to Honduras. *Id.* On June 1, 2012, USCIS found that Petitioner did not have a reasonable fear of persecution or torture of returning to Honduras and issued to Petitioner a Form I-863, Notice of Referral to Immigration Judge. *Id.* ¶ 10.

On June 27, 2012, the Immigration Court vacated the USCIS decision, thereby placing Petitioner into "withholding only" proceedings, and on July 9, 2012, Petitioner was released from DHS custody on an Order of Supervision. *Id.* ¶ 11–12; [Doc. No. 1-2].

On March 16, 2016, an Immigration Court granted Petitioner withholding of removal as to Honduras. [Doc. No. 1-3]. To date, Petitioner has complied with the conditions of her Order of Supervision, including a requirement to periodically, at DHS's request, send letters to countries to request that they take her for permanent residence. [Doc. No. 2] ¶ 22. Petitioner is also in the process of applying for a U-visa, which, once approved, would result in a grant of deferred action, halting her removal. *Id.* ¶ 21.

On November 8, 2025, Petitioner failed to appear for her scheduled check-in with Immigration and Customs Enforcement ("ICE") but appeared at the ICE check-in location on November 25, 2025,[1] where she was directed to find a third country to be removed to by her next report date of February 27, 2026. *Id.* ¶ 13.

On February 27, 2026, DHS issued Petitioner a Notice of Revocation of Release (the "Revocation Notice") pursuant to 8 C.F.R. §241.4(*l*), digitally signed by Field Office Director Erik Weiss, stating that "ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order [of] removal against you. . . . Subject will be removed to Mexico."[2] [Doc. No. 1-4]. On that same day, February 27, 2026, Petitioner was placed into civil immigration custody, and currently remains in detention at the Caroline Detention Facility. [Doc. No. 2] ¶ 23. Respondents concede that Mexico has not yet consented to receiving Petitioner. [Doc.

---

[1] Petitioner denies "fail[ing] to appear for a scheduled hearing" on November 8, 2025, and submits a declaration stating that she was provided documentation and verbal confirmation by the ICE Washington Field Office that her last check was scheduled for November 25, 2025, rather than November 8, 2025. [Doc. No. 6-1].
[2] Under the "Notice of Informal Interview" section of the Revocation Notice, the date as to when Ms. Sanchez "will be afforded . . . an opportunity to respond to the reasons for this revocation" was left blank. [Doc. No. 1-4].

No. 5-1] ¶ 15.

## II.    LEGAL STANDARD

"A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States.'" *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations omitted).

## III.    DISCUSSION

Petitioner seeks habeas relief from this Court on the grounds that her ongoing detention violates the Immigration and Nationality Act (the "INA") (Count I), the Administrative Procedure Act (Count II), and the Constitution's Due Process Clause (Count III).[3] Respondents oppose the Petition, arguing that because Petitioner has been in detention for less than six months, her detention is presumptively reasonable under *Zadvydas v. Davis*, 533 U.S. 678 (2001) and she has not met her burden to demonstrate that her removal is not "foreseeable"; that an APA claim is not cognizable in the habeas context; and Petitioner is not entitled to any additional due process than what she has already received. [Doc. No. 5].

The Court construes Petitioner's APA claim, which alleges that Respondents failed to abide by the INA's implementing regulations, [Doc. No. 2] at 21–22, as an *Accardi* claim.[4] *See Damus v. Nielsen*, 313 F. Supp. 3d 317, 335–336 (D.D.C. 2018) (recognizing plaintiff's *Accardi* claims under the APA) (collecting cases).[5] In that regard, the Court rejects Respondents' argument that

---

[3] Because the Court grants the Petition on Count II, it does not address the remaining counts raised in the Petition.

[4] The *Accardi* doctrine requires an agency to follow its own procedures and regulations. *See Nader v. Blair*, 549 F.3d 953, 962 (4th Cir. 2008) ("[W]hen an agency fails to follow its own procedures or regulations, that agency's actions are generally invalid.").

[5] The Court notes the hybrid nature of an *Accardi* claim and the court split as to whether such claims are properly raised under the Due Process Clause of the Fifth Amendment, the APA, as a stand-alone claim, or all three. Given the potential for anomalous outcomes that would result from how a court construes an *Accardi* claim, and whether it is rooted in the Constitution, the APA, or something else, the Court declines to hold that Petitioner's claims of unlawful detention under the APA are beyond the Court's reach in a habeas proceeding. *Compare Brown v. Haaland*, No. 321CV00344MMDCLB, 2023 WL 5004358, at *4 (D. Nev. Mar. 6, 2023) (holding that, while "an *Accardi* claim is

3

Petitioner's APA claim is not cognizable in a habeas proceeding. The essence of any habeas corpus petition "is an attack by a person in custody upon the legality of that custody." *Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973). Here, Petitioner challenges the legality of her detention based on the manner in which Respondents revoked her Order of Supervision that directly led to the detention she challenges in this habeas action.[6]

As to the merits of the Petition, the Court, in a similar case, previously held that Respondents' failure to follow 8 C.F.R. §§ 241.4(*l*) in revoking an Order of Supervision violates the *Accardi* doctrine's mandate on an agency to follow its own procedures and regulations. Order, *Benitez Pineda v. Noem et al.*, No. 1:25-cv-2337 (E.D. Va. Mar. 2, 2026), Dkt. No. 17. The INA's implementing regulations provide that a noncitizen "who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody." 8 C.F.R. § 241.4(*l*)(1). The government is required to notify the noncitizen of the "reasons for revocation of his or her release or parole" and afford the noncitizen "an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* Separately, the "Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody [a noncitizen] previously approved for release under the procedures in this section." *Id.* § 241.4(*l*)(2). And "[a] district director may also revoke release of

---

distinct from a constitutional due process claim," the plaintiffs' *Accardi* claim "may proceed under the APA"); *D.N.N. v. Bacon*, No. 1:25-CV-01613-JRR, 2025 WL 3525042 (D. Md. Dec. 9, 2025) ("[A]n *Accardi* claim is simply a subset of claims for relief cognizable under the APA."), *with Montilla v. I.N.S.*, 926 F.2d 162, 167 (2d Cir. 1991) (noting "[t]he *Accardi* doctrine is premised on fundamental notions of fair play underlying the concept of due process"); *Wilkinson v. Legal Servs. Corp.*, 27 F. Supp. 2d 32, 61 (D.D.C. 1998) (explaining that "the Due Process Clause requires that agency officials follow their own rules, even those promulgated gratuitously").

[6] Respondents do not dispute that claims under the Constitution are cognizable and indeed the core inquiry in habeas proceedings. *Bounds v. Smith*, 430 U.S. 817, 828 (1977) (A habeas claim is "the first line of defense against constitutional violations.").

[a noncitizen] when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Id.* Finally, if the noncitizen is not released from custody following the "informal interview" described above, the regulations provide for a "normal review process" of the custody determination within three months after release is revoked. *Id.* § 241.4(*l*)(3).

Here, Petitioner was detained on February 27, 2026 and on that same day, Respondents revoked her Order of Supervision pursuant to 8 C.F.R. § 241.4(*l*), signed by a Field Office Director, stating that "ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order [of] removal against you." [Doc. No. 1-4]. As an initial matter, the revocation of Petitioner's Order of Supervision is deficient for its failure to make the required finding that revocation was in the public interest and the Executive Associate Commissioner could not be involved in the decision due to extenuating circumstances. 8 C.F.R. § 241.4(*l*)(2) (authorizing district director to revoke release where "in the district director's opinion, revocation is in the public interest *and* circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner") (emphasis added). Moreover, although Respondents submit that Petitioner received the informal interview contemplated by 8 C.F.R. § 241.4(*l*)(1), [Doc. No. 5] ¶ 14, there is no indication on the record that the "normal review process," ordinarily to occur within three months after release is revoked, pursuant to 8 C.F.R. § 241.4(*l*)(3), has been initiated.

As another Court in this Circuit has concluded, the requirement that a senior official "make the determination to revoke release—that is, to restrict a person's liberty—is not merely a housekeeping requirement" but instead "part of a procedural framework, designed to insure the fair processing of an action affecting an individual, a violation of which can be deemed to be prejudicial and thus to implicate due process." *Santamaria Orellana v. Baker*, No. CV 25-1788-

TDC, 2025 WL 2841886, at *5 (D. Md. Oct. 7, 2025). Therefore, this Court concludes that the February 27, 2026 revocation of Petitioner's Order of Supervision was unlawful under the *Accardi* doctrine.[7]

### IV.   CONCLUSION

For the reasons stated above, the Petition is GRANTED and it is hereby

**ORDERED** that Petitioner be RELEASED from custody immediately subject to her July 9, 2012 Order of Supervision, which may not be revoked unless done so in compliance with the requirements of 8 C.F.R. § 241.4.

The Clerk is directed to send copies of this Order to all counsel of record and to terminate the case.

March 26, 2026
Alexandria, Virginia

_____
Anthony J. Trenga
United States District Judge

---

[7] In Reply, Petitioner raises for the first time the request to have her negative fear determination reviewed by an Immigration Judge pursuant to 8 C.F.R. § 208.31(g). [Doc. No. 6] at 6–7. This issue is not properly before the Court, and is in any event premature, since Petitioner concedes that she "has not yet been informed of an official negative reasonable fear determination," [Doc. No. 6] at 4. Accordingly, the Court declines at this time to order such relief. Should Petitioner's request for review by an Immigration Judge of any negative fear determination be denied, the Court will revisit this issue if properly raised by Petitioner.